Philip H. Wood appeals from a decree of the Essex County Orphans Court dismissing his petition to open certain decrees settling the accounts of his brother, Orrin G. Wood, as trustee under a codicil to the last will and testament of Anna L. Wood, deceased, late of Essex County, New Jersey. The testatrix, who was the grandmother of Orrin and Philip, bequeathed to the former a fund of about $30,000 in trust to pay the income to Philip during his life and upon his death to divide the principal among Philip's children. Philip was married and had one child, a daughter, born in 1919. Philip contends that the trustee should not have been allowed the disbursements of income which are discussed below, and that the allowance of the items was procured by fraud or resulted from mistake.
Income first came due under the trust in February, 1926, while Philip was in Europe. He had left instructions with the trustee to send the income checks to his wife, and further he had empowered her to endorse his name on such checks and use the proceeds for the support of herself and their daughter. On February 25th, the trustee sent to Mrs. Wood the first check for income and she endorsed it with her husband's *Page 543 
name. In due course, Philip returned from his travels, but in the middle of July and before any other income payments had been made, he disappeared from his home, leaving a letter addressed to his wife, saying that he was about to commit suicide. Neither the trustee nor Mrs. Wood took the threat seriously and as it turned out years later, they were correct. On July 30th, 1926, and from month to month thereafter to May, 1929, the trustee sent the income to Mrs. Wood by checks to Philip's order, and she endorsed his name and used the proceeds. The payments to July 12th, 1928, $1,883, were within the scope of Philip's instructions and were entirely proper.
But on the day last mentioned, Mrs. Wood obtained in the Probate Court of Nantucket County, Massachusetts, a decree of divorce and since thereafter she was not Philip's wife, it may be questioned whether the authority which he had given the trustee to pay the income to her still remained in effect. Yet the trustee kept on paying her for ten months, $1,250 in all. A husband is not absolved from his obligation to support his wife by a dissolution of the marriage relation resulting from his own misconduct. Deitrick v. Deitrick, 88 N.J. Eq. 560. And of course a man's duty toward his infant child does not end with divorce. Philip had, in effect, directed Orrin to send the trust income to Mrs. Wood to be applied by her, as Philip's agent, toward performance of his duty to herself and their child. The trustee, in good faith, construed his instructions to include payments after the divorce. If he was mistaken, it was a reasonable mistake such as a careful man might make and not one which now should lead to opening the account. In the trustee's accounts, the payments by check to Philip's order which were handled in the way I have stated, were shown as payments to Philip. He charges that this was a fraudulent concealment of the fact that Mrs. Wood was the actual recipient of the money. I cannot agree. Mrs. Wood was Philip's agent in the matter, so that payments to her were payments to him.
The trustee eventually became doubtful of the propriety of continuing the payments to Mrs. Wood. Perhaps he feared that his brother, after all, were no longer living. He consulted *Page 544 
counsel who advised him to stop paying. However, both Orrin and his attorney believed that Philip still owed a duty to his child and former wife. So they put Mrs. Wood in touch with a reputable New Jersey lawyer, Mr. Henry T. Stetson, to take such steps as he might advise. The decree nisi had embodied an allowance to Mrs. Wood of $200 monthly for the care and support of herself and of the child. Mr. Stetson knew that an action at law may be maintained for accrued alimony. Bullock v. Bullock,57 N.J. Law 508. And that income collected by a trustee to which a debtor has an absolute right under a testamentary trust, is subject to attachment. Baumann v. Ballantine, 76 N.J. Law 91.
We can suppose that the trustee, pursuant to P.L. 1912 p. 551, now found in R.S. 3:13-12, had given a power of attorney to the surrogate under which the sheriff could attach Philip's income by serving the surrogate, as the trustee's attorney. In Mrs. Wood's behalf, Mr. Stetson instituted an attachment suit in the Essex County Circuit Court to recover the accrued alimony. While the Circuit Court record is not in evidence, much appears from Philip's petition and the brief of his proctor. On February 13th, 1930, the sheriff of Essex County attached Philip's income in the hands of Orrin, as trustee. Philip made default and judgment final was entered for $3,131, damages and costs. A scire facias
against the trustee apparently issued and he was ordered to pay Mrs. Wood the attached funds to satisfy her judgment. The trustee, on February 10th, 1931, paid to Mrs. Wood's attorney $2,859. A few years later, there seems to have been a second attachment and order to pay pursuant to which the trustee, on January 4th, 1935, paid Mrs. Wood $5,707.
The appellant says that the trustee's action in facilitating Mrs. Wood's endeavors to collect her alimony by sending her to Mr. Stetson, constituted a breach of trust, by reason whereof the trustee should be surcharged with the sums that he paid Mrs. Wood pursuant to the orders of the Essex County Circuit Court. This act of the trustee does not appear to me a badge of fraud. Indeed, he could well assume that his brother would wish that Mrs. Wood and the child should be supported in this manner. Appellant next alleges that the Circuit *Page 545 
Court judgments were too large because Mrs. Wood did not give credit for the sums received from the trustee after the date of the decree nisi, and that Orrin should have seen to it that proper credit was given. But there is no proof that the judgments were excessive and my own calculation indicates they were not.
Appellant also shows that the decree of the Nantucket Probate Court for alimony was void and argues hence that the judgments of the Essex County Circuit Court in attachment and on scirefacias were also void. Philip, in the divorce suit, was served only by publication and mailing, and for this reason the Probate Court on August 10th, 1944, adjudged that the decree for alimony was void and of no effect. If Orrin had been aware of the infirmity of the Massachusetts decree and yet had aided Mrs. Wood to enforce it, a strong argument of fraud might be made. But such is not the case. The invalidity of the decree was not obvious. Philip was a citizen of Massachusetts, domiciled, so far as appears, within that state. The general rule is that a personal judgment against one domiciled in the state, is valid if substituted service is made by a method permitted by statute and reasonably calculated to give him an opportunity to be heard, even though he does not in fact receive knowledge of the action. Thus service upon a resident may be made by leaving the process at his usual place of abode. So, too, it is sometimes considered that service by mail or by handing the process to the defendant outside the state, is good. Restatement-Judgments 84 § 16.
We start with the premise that the decree for alimony was void and subject to collateral attack. Statements may be found that an action cannot be based on a void judgment. This properly means that when the invalidity of the judgment is brought to the attention of the second court, the action should be decided in favor of the defendant. The circumstance that the Massachusetts decree was void does not invalidate the judgment and record of our Circuit Court. 50 C.J.S., Judgments, § 865. A void judgment may be likened to a forged promissory note: The one is not in the law's estimation a judgment or the other a note. But the *Page 546 
fact that a defendant is not indebted upon the apparent judgment or upon what looks like his promissory note, does not impair the power of a court to adjudicate that he is so indebted. The Essex Circuit Court had jurisdiction of the subject-matter, namely, the alleged debt, and also of the fund which was attached; its proceedings were regular. Its judgments are not open to collateral attack on the ground that the Massachusetts judgment was void. Restatement-Judgments, § 13. The trustee was right in obeying the Circuit Court.
Beginning in August, 1938, the trustee made payments of income to the guardian of Philip's daughter, Jean, and continued these payments until March, 1940, when she became of age. They total $5,108. He paid Jean herself to September, 1940, $560. Then Philip, at long last, after an absence of fourteen years, reappeared. On March 10th, 1941, the trustee wrote him, "During your absence under authority from the Probate Court, the income has been paid as partial support for your family. It is probable that the court will extend this authority but I think it would be preferable on your part if you would indicate to me by writing to that effect, that you wish to continue voluntarily your obligation to your family by having me pay to them the income from this trust." Philip replied, "Certainly I wish you to continue to pay the income from the Anna L. Wood trust exactly as you have been doing in the past." Pursuant to this authority, the trustee paid Jean a further $1,340. He filed his tenth account the next year showing all the payments to the daughter and the last $1,200 of the payments to her guardian. The earlier payments to the guardian had been accounted for in 1939. A copy of the tenth account with the notice of settlement was received by Philip August 3d 1942, and was allowed without objection November 10th, 1942. That is the last of the accounts which Philip asks to be opened. If he had any objections to it, he should have stated them in 1942 and not have waited for more than two years, or until he filed his petition February 9th, 1945.
The appellant's petition to re-open the accounts of the trustee is sprinkled with charges of fraud, but he has proved no *Page 547 
fraud by the trustee, either in handling the estate or in the settlement of his accounts. On the contrary, the trustee, in the difficult situation which was brought about by appellant, appears to have acted painstakingly and in an entirely upright manner. Allegations of mistake are also presented which may be characterized as "the approval by the court of sundry items in the account which petitioner urges should not have been allowed. It is not shown that the judge misapprehended the nature of the items, or did not intend to approve them. If his action was in any way incorrect, it was mere error. Error is not mistake for which a decree will be opened." Brown v. Fidelity Union TrustCo., 135 N.J. Eq. 404. The allowance of the items of which appellant complains was at most, erroneous.
Appellant's troubles he owes to himself. If he had not gone into concealment, he would have had knowledge of all the accountings in time to except before they came on for settlement, and to forestall any mistake in the approval of the accounts. His lack of actual notice is the natural consequence of his own act and therefore he cannot claim a sympathetic response from the court to his petition. In the language of Vice-Chancellor Stein, "The court below exercised sound discretion based on principles of justice and equity, in the light of the circumstances. * * * The action of that court should not be reversed unless it is clearly wrong. Since I do not find it so, the order appealed from must be affirmed." In re Riland, 133 N.J. Eq. 152. *Page 548